UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| MARCY CURTIS, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   v.<br><br>MAJESCO, KETAN MEHTA, EARL GALLEGOS, ADAM ELSTER, RAJESH HUKKU, CAROLYN JOHNSON, ARUN K. MAHESHWARI, SUDHAKAR RAM, ROBERT P. RESTREPO, JR., MAGIC INTERMEDIATE, LLC, and MAGIC MERGER SUB, INC.,<br><br>          Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on August 8, 2020 (the "Proposed Transaction"), pursuant to which Majesco ("Majesco" or the "Company") will be acquired by affiliates of Thoma Bravo, L.P.

2. On August 8, 2020, Majesco's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Magic Intermediate, LLC ("Parent") and Magic Merger Sub, Inc. ("Merger Sub," and together with Parent, "Magic"). Pursuant to the terms of the Merger Agreement, Majesco's stockholders will receive $16.00 in cash for each share of Majesco common stock they own.

3. On August 14, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Majesco common stock.

9. Defendant Majesco is a California corporation and a party to the Merger Agreement. Majesco's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "MJCO."

10. Defendant Ketan Mehta is Chairman of the Board of the Company.

11. Defendant Earl Gallegos is Vice Chairman of the Board of the Company.

12. Defendant Adam Elster is Chief Executive Officer and a director of the Company.

13. Defendant Rajesh Hukku is a director of the Company.

14. Defendant Carolyn Johnson is a director of the Company.

15. Defendant Arun K. Maheshwari is a director of the Company.

16. Defendant Sudhakar Ram is a director of the Company.

17. Defendant Robert P. Restrepo, Jr. is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is a Delaware limited liability company and a party to the Merger Agreement.

20. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Majesco (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of July 6, 2020, there were approximately 43,294,679 shares of Majesco common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28. Majesco provides technology, expertise, and leadership that helps insurers modernize, innovate, and connect to build the future of their business.

29. The Company's market-leading solutions include: CloudInsurer® P&C Core Suite (Policy, Billing, Claims); CloudInsurer® LifePlus Solutions (AdminPlus, AdvicePlus, IllustratePlus, DistributionPlus); CloudInsurer® L&A and Group Core Suite (Policy, Billing,

4

Claims); and Digital1st® Insurance with Digital1st® Engagement, Digital1st® EcoExchange, and Digital1st® Platform.

30. On August 8, 2020, Majesco's Board caused the Company to enter into the Merger Agreement.

31. Pursuant to the terms of the Merger Agreement, Majesco's stockholders will receive $16.00 in cash for each share of Majesco common stock they own.

32. According to the press release announcing the Proposed Transaction:

> Majesco (NASDAQ: MJCO), a global leader of cloud insurance software solutions for insurance business transformation, today announced that it has signed an amended definitive agreement to be acquired by Thoma Bravo, L.P., a leading private equity firm focused on the software and technology-enabled services sectors, in a transaction valuing the company at $729 million. Following the closing of the transaction, Majesco will operate as a privately held company.
>
> Under the amendment, Thoma Bravo will acquire all of Majesco's outstanding shares for $16.00 per share. The price represents a premium of approximately 113% over Majesco's average closing price of $7.52 during the 30-trading day period ended July 17, 2020.
>
> The proposed merger is subject to the approval of Majesco shareholders and the approval of the shareholders of Majesco's parent company, Majesco Limited. Majesco's and Majesco Limited's Boards of Directors have unanimously approved the merger and recommend that their respective shareholders approve the merger. Majesco Limited's promoter shareholders have entered into a voting agreement to vote in favor of a transaction with Thoma Bravo and against a competing transaction, which remains in place for a 7-month period following any termination of the transaction documents. Majesco will solicit written consents from its shareholders to approve the Merger Agreement and expects to distribute the consent solicitation statement in August 2020.
>
> The increased offer from Thoma Bravo and the amendment followed Majesco's receipt of an unsolicited acquisition proposal from an unaffiliated third party.
>
> Completion of the merger is not subject to a financing condition but is subject to the accuracy of the representations and warranties, performance of the covenants and other agreements included in the Merger Agreement and customary closing conditions for a transaction of this type, including regulatory approvals in the US and India. Assuming satisfaction of those conditions, the Company expects the merger to close by the end of 2020.

Nomura Securities International, Inc. is acting as financial advisor to Majesco, and Sheppard, Mullin, Richter & Hampton LLP and Khaitan & Co are acting as legal advisors to Majesco and Majesco Limited, respectively. Kirkland & Ellis LLP and Trilegal are acting as legal advisor to Thoma Bravo.

### *The Proxy Statement Omits Material Information, Rendering It False and Misleading*

33.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

34.     As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

35.     First, the Proxy Statement omits material information regarding the Company's financial projections.

36.     The Proxy Statement fails to disclose: (i) all line items used to calculate Adjusted EBITDA; (ii) the reasons the projections are only for the fiscal year ending March 31, 2021; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

37.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

38.     Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Nomura Securities International, Inc. ("Nomura").

39.     With respect to Nomura's Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Nomura in the analysis.

40. With respect to Nomura's Comparable Companies Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Nomura in the analysis.

41. With respect to Nomura's Premiums Paid Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

42. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

43. The Proxy Statement also fails to disclose the Board's basis for instructing Nomura to not conduct a discounted cash flow analysis.

44. Third, the Proxy Statement omits material information regarding Nomura.

45. The Proxy Statement fails to disclose the timing and nature of the past services Nomura provided to Parent and its affiliates, and the amount of compensation Nomura received for providing such services.

46. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

47. Fourth, the Proxy Statement fails to disclose whether the Company entered into any non-disclosure agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing other potential acquirors from submitting offers to acquire the Company.

48. Without this information, stockholders may have the mistaken belief that if potentially interested parties wished to come forward with a superior offer, they are or were

permitted to do so, when in fact they are or were contractually prohibited from doing so.

49.     The omission of the above-referenced material information renders the Proxy Statement false and misleading.

50.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Majesco

51.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Majesco is liable as the issuer of these statements.

53.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

54.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding whether to approve the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

56. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

57. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

58. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Magic

59. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60. The Individual Defendants and Magic acted as controlling persons of Majesco within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Majesco and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

61. Each of the Individual Defendants and Magic was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

62. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and

exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

63. By virtue of the foregoing, the Individual Defendants and Magic violated Section 20(a) of the 1934 Act.

64. As set forth above, the Individual Defendants and Magic had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: August 20, 2020

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

*Attorneys for Plaintiff*